HENRY A. HIDDEN *v.* WILLIAM W. BISHOP.

It is a good defence to an action brought by a discounter, against the guarantor, of a check, that the guaranty was given upon the faith that the check was to be deposited by the maker with the discounter as collateral security for, and to obtain the discount of the note of another exceeding the amount of the check, but was really discounted upon the deposit of the note as collateral security for the payment of the check; and that the discounter had, at the request of the maker of the check, but without the assent of, or any communication with the guarantor, collected and applied the collateral to other debts due by the maker of the check to the discounter; although there was no agreement or communication between the guarantor and discounter at the time of the discount of the check and the deposit of the note as collateral thereto.

ASSUMPSIT against the defendant as guarantor of a check for $2,000, dated October 18, and payable November 18, 1856, "to ——— or bearer," drawn by one Doyle on the Mercantile Bank of Providence, and discounted by the plaintiff. The case having been submitted to the court, under the statute, in fact as well as law, it appeared, in substance, that Doyle, having procured the defendant to indorse the check for his accommodation, under a representation that it was to be deposited with the plaintiff as collateral security for the payment of a note of P. Allen & Sons, for $2,114.10 at six months, and dated October 13, 1856, which the plaintiff had agreed to discount, on the day of the date of the check procured the same to be discounted by the plaintiff, at the same time depositing said note of P. Allen & Sons with the plaintiff, as collateral security for the payment of the check; that at the time of this transaction, no communication was had between the plaintiff and defendant, nor did Doyle inform the plaintiff, nor did it appear that the plaintiff at that time, nor until after the 18th November, 1856, had any express notice that the defendant relied in any way upon the note of P. Allen & Sons for his protection as indorser of the check; that the plaintiff, having previously discounted other paper for Doyle to the amount of about $2,500, then overdue and unpaid, upon which the plaintiff's brother-in-law and two others were Doyle's accommodation indorsers, on the 17th of November, the day before the check fell due, (Doyle having stopped payment on the 5th,) by Doyle's direction, and

3 *

at the request of his brother-in-law, and without communication with or procuring the assent of the defendant, changed the application of the collateral note from the check in suit, and afterwards applied the proceeds of the same, when collected, to the other paper discounted by him for Doyle as aforesaid. It also appeared that about the 10th of November, Doyle applied to the defendant to allow the note of P. Allen & Sons to be applied to other paper than the check, the defendant having become apprised that the check had been discounted and the note deposited as collateral to it, and that the change of application requested was refused. There was no direct evidence, however, that this request and refusal was known to the plaintiff. The check was, at maturity, duly presented for payment, and there being no funds of Doyle in the Mercantile Bank, the bank refused payment, of which notice was given to the defendant, and this suit instituted against him as guarantor.

The case was argued by *J. P. Knowles* for the plaintiff, and by *Wm. H. Potter* for the defendant.

*Knowles* relied upon the fact, that there was no agreement between the plaintiff and defendant that the former should hold the collateral for the security of the latter as indorser; that it did not even appear that the plaintiff had reason to suppose that the defendant knew of its deposit; and that, in changing the application of the collateral, as he did, at the request of the depositor alone, he was justified by the common usage, in this respect, of the bill brokers and banks of Providence.

He also contended that the defendant was not properly a guarantor or surety for the payment of this check, but in the strict and proper sense an indorser of the same; and cited *Hurd* v. *Little*, 12 Mass. 502, and Bayley on Bills, 252, to the point that in case of an *indorsement*, such a giving up of collateral security, as proved, would not discharge the party bound by it.

He also insisted that if the defendant was discharged under the circumstances, it was a discharge which could avail him only in equity, and was no defence to an action at law.

*Potter* cited *Parsons* v. *Bridduck*, 2 Vern. 608; *Mayhew* v. *Crickett*, 2 Swanst. 193; *Samuel* v. *Howarth*, 3 Mer. 271; *Stone et al.* v. *Compton*, 5 Bing. N. C. 142; S. C. 35 Eng. C. L. R.

57; *King* v. *Baldwin*, 2 Johns. Ch. R. 554–557; S. C. 17 Johns. R. 334, 391; *Hunt* v. *Smith*, 17 Wend. 179; *Lafarge* v. *Horter*, 11 Barb. Sup. Ct. R. 159; *Carpenter* v. *King*, 9 Metc. 511, 515; *Commonwealth* v. *Miller*, 8 Serg. & R. 452; *Same* v. *Hayers*, 16 Ib. 252; *United States* v. *Cowell*, 4 Wash. Cir. Ct. R. 620; *Mayhew* v. *Boyd*, 5 Miller, (Md.) R. 102; *Wayne* v. *Kelly*, 2 Bailey, 551,—to show, that upon misapplication of collateral security by the creditor, the surety was discharged as well at law as in equity; and contended further, upon the evidence, that the plaintiff must have known, under the circumstances, that the defendant gave his indorsement upon the faith of being protected in some way from loss by the note of P. Allen & Sons.

AMES, C. J.   The equity which entitles a surety to the benefit of all securities of the principal deposited with the creditor to assure payment of the debt, is wholly independent of any contract between the surety and the creditor, and indeed of any knowledge on the part of the surety of the deposit of the securities.   A striking illustration of this equity is afforded by the recent case of *Lake* v. *Bruton*, 39 Eng. L. & Eq. 443, 444; in which, there having been a contract for specific indemnity to the surety, it was contended, that upon the principle of " *expressio unius, exclusio alterius*," he became disentitled to the benefit of certain other security deposited by the principal with the creditor, without the privity of the surety.   The Lords Justices held, however, that for the very reason that the surety had no knowledge of the deposit, the above maxim could not apply to the construction of the surety's contract for specific indemnity; and, affirming the general equity, allowed him the full benefit of the other security deposited by his principal with the creditor without his knowledge.   In such case, the creditor is regarded as a trustee of the security deposited with him, for the benefit of all parties known to him to be interested in it, and is bound to administer the trust created by the deposit, unless discharged by the surety, in *his* relief, as well as in accordance with his own interests and those of the principal.   It follows, that any application of the security by the creditor to other purposes than those marked out by the terms of the deposit, or

any decrease of its value by means of his negligence or mistake, discharges the surety from liability to him in that character, to the extent of the misapplication or decrease of value thus occasioned. *Matthew* v. *Crickett and others*, 2 Swanst. 190, 191; *Samuel* v. *Howarth*, 3 Mer. 277, 278; *Law* v. *The East India Company*, 4 Ves. 824; 2 Am. Lead. Cases, Hare & Wallace's notes, 343 to 369, inclusive, for American cases.

The equities of a surety are administered by courts of law, so far as their remedial forms will permit, as well as by courts of equity; and applied, as they must be, to the decision of the case at bar, operate with great force to discharge the defendant as guarantor of the check here sued. The defendant is not only a surety, but became such, in the matter of this discount, upon the representation of his principal that the check was to be merely collateral to the note of P. Allen & Sons, which was for an amount exceeding it, and that he would thus be protected from any loss in consequence of his suretyship. The plaintiff was apprised of the character in which the defendant engaged himself to him, by the very form of his engagement, as well as by the fact, that the maker of the check procured and received the benefit of the discount; and, under the circumstances, might reasonably have presumed, what turns out to be true, that the defendant indorsed the check upon faith of being protected in some mode by the note of P. Allen & Sons. The application of the proceeds of that note by direction of the principal, and without the assent of the defendant, to other paper discounted by the plaintiff, and in relief of other sureties, one of them his near connection, was, far within the rule so well and wisely established for the protection of sureties, a clear breach of the trust created by the original deposit for the benefit of the defendant. As the note of P. Allen & Sons has been paid, and in amount exceeds the amount of this indorsement, the equities between these parties are perfectly administered by holding, as we do, the defendant discharged as guarantor. *Judgment for defendant.*